COMMONWEALTH TRUST CO. et al. v. HARDEE. (No. 177.)

(Court of Civil Appeals of Texas. Beaumont. Dec. 31, 1917. Rehearing Denied Jan. 23, 1918.)

1. BILLS AND NOTES ☞106—ILLEGAL CONSIDERATION—ISSUING STOCK FOR NOTE—SUFFICIENCY OF EVIDENCE.

In suit by maker to cancel note and trust deed securing same on ground that, as note was given in part for stock of defendant trust company doing a banking business, it was void, evidence held sufficient to support jury findings that the shares of stock belonged to the company, were issued by it out of its capital stock, and that the note was made payable to it.

2. BILLS AND NOTES ☞520—BONA FIDE PURCHASER—ESTOPPEL—EVIDENCE.

In suit by maker against original payee and indorsee to cancel a note, evidence held insufficient to show that maker requested indorsee to purchase note or promised or led him to believe that she would pay the same, so that she was estopped to deny liability as to him.

3. BILLS AND NOTES ☞351—PURCHASER AFTER MATURITY—RIGHTS.

The purchaser of a note from the payee long after maturity, took it subject to all defenses that the maker had against the payee.

4. BILLS AND NOTES ☞106—NOTE GIVEN FOR CORPORATE STOCK—VALIDITY.

Where a trust company gave shares of its stock as part consideration for a note, the note was void and unenforceable in view of Const. art. 12, § 6, providing that no corporation shall issue stock except for money paid or property actually received, and that all fictitious increase of stock or indebtedness shall be void.

Appeal from District Court, Hardin County; J. Llewellyn, Judge.

Suit by Mrs. V. D. Hardee against the Commonwealth Trust Company and others.

Judgment for plaintiff, and defendants appeal. Modified and affirmed.

Stevens & Stevens, of Houston, for appellants. E. B. Pickett, of Liberty, and F. J. Winter, of Houston, for appellee.

HIGHTOWER, Jr., C. J. This suit was filed by the appellee, Mrs. V. D. Hardee, in the district court of Liberty county on the 31st day of July, 1915, against the Commonwealth Trust Company, a private corporation, Charles R. Brice and F. J. Winter, as defendants.

Plaintiff, for cause of action, alleged substantially the following: That about the 1st day of November, 1912, she applied to defendant Commonwealth Trust Company, which at that time was doing business as a banking and trust company, and lending money upon security, for a loan of $1,165.86; that plaintiff needed said sum of money for the purpose of paying off and discharging a lien on a certain tract of land owned by her and situate in Liberty county, Tex., and being a portion of the Reason Green league of land in said county, and which tract was alleged to contain 363 acres of land; that plaintiff was advised by one W. E. Richards, who at that time was president of the Commonwealth Trust Company, that the loan desired by her would probably be extended; that thereafter, on November 30, 1912, plaintiff again called upon said W. E. Richards, as president of the Commonwealth Trust Company, for said sum of money, and that thereupon she was advised by the said W. E. Richards, as president of said Commonwealth Trust Company, that said company could only make the loan to her upon condition that she purchase from said Commonwealth Trust Company ten shares of its capital stock, at the price of $105 per share; that the said W. E. Richards represented to plaintiff that said stock at the time was worth $105 per share, and had been paying and was at that time paying 10 per cent. dividends, and would pay larger dividends in the future; that plaintiff, being compelled to raise the sum of $1,165.86 with which to pay off the lien on her land, agreed with the said W. E. Richards, as president of the Commonwealth Trust Company, to purchase said ten shares of stock at the price of $105 per share, aggregating $1,050; that thereupon she executed to the Commonwealth Trust Company two notes, one for the sum of $2,310, and the other for the sum of $183, both bearing interest at the rate of 10 per cent. per annum from their date until paid, and both being payable to the Commonwealth Trust Company 90 days thereafter; that said stock of the Commonwealth Trust Company so purchased by her was not worth $105 per share, as represented by the said W. E. Richards, and that, in fact, such stock was not worth at that time in excess of 10 cents per

share; that such representations by the said Richards, as president of said trust company, as to the value of said stock, were wrongfully, falsely, and fraudulently made for the purpose of inducing plaintiff to purchase said stock; and that she would not have done so but for such false and fraudulent representation on the part of said Richards, and by which she was deceived. Plaintiff further alleged that the only money actually received by her at the time of the execution of said notes was the sum of $1,-165.86, and that the $183 note was for the purpose, as she understood, of paying the attorneys' fees, examination of abstract, etc., in connection with the loan to her of said money, and further that the note for $2,310 was void, for the reason that the same was executed by her in payment for said ten shares of stock of the Commonwealth Trust Company, as well as evidencing the fact of her indebtedness to said company for the loan of said sum of $1,165.86; that said transaction was wholly between plaintiff and the Commonwealth Trust Company, and that, while the negotiations leading up to and the consummation of said transaction were had between plaintiff and the said W. E. Richards, the said Richards was acting for and on behalf of the Commonwealth Trust Company, as its president; that the defendant Brice was claiming to be the legal owner of the $2,310 note executed by her to the Commonwealth Trust Company, and was claiming the right to collect from plaintiff the unpaid balance due on said note, but that, as a matter of fact, such claim on the part of the defendant Brice was only simulated, and that in truth and in fact said note was still owned by the Commonwealth Trust Company, but that, if it be true that defendant Brice had acquired said note, he did so long after its maturity, and took the same subject to all defenses that plaintiff had against said note; that, in order to secure the payment of said notes executed by plaintiff, she at the same time executed and delivered to one Fleming, as trustee, a deed of trust on the tract of land owned by her in Liberty county, and hereinbefore mentioned; that the defendant F. J. Winter had been made substitute trustee in said deed of trust for the purpose of executing the same in behalf of the Commonwealth Trust Company, and that at the instance of defendant Brice the said Winter, as trustee, had advertised said tract of land for sale, under the authority given by said deed of trust; that the said Winter would proceed to sell said tract of land, as trustee, under the authority conferred by said deed of trust, in payment of the balance claimed by defendant Brice to be due on said note for $2,310; and that, unless restrained and enjoined, said Winter would sell said land under said deed of trust, as he had advertised and was threatening to do. A temporary injunction was prayed for,

restraining the said Winter as trustee from selling said tract of land under said deed of trust, and it was prayed that upon final hearing said note claimed by defendant Brice be canceled, and also that said deed of trust be canceled and held for naught, as constituting a cloud upon plaintiff's title to the land covered thereby. It was further alleged by plaintiff that she had paid back to the Commonwealth Trust Company all money that she had received from said company at the time said notes and deed of trust were executed.

The defendants Commonwealth Trust Company and C. R. Brice filed separate answers, the answer of the defendant Brice, on which he went to trial, being his second amended original answer, and the answer of the Commonwealth Trust Company being its first amended original answer.

The answer of the Commonwealth Trust Company consisted of general demurrer and general denial, and further said company specially alleged that it had no transaction whatsoever with the plaintiff, Mrs. V. D. Hardee, as claimed by her; that the ten shares of stock of said company that were issued to her belonged, at the time of her purchase of same, to the said W. E. Richards individually, and were issued out of stock owned by the said Richards individually, and that the loan of money made to the plaintiff at the time of such transaction was made by the said W. E. Richards personally and, individually, out of his own personal means and funds, and that in doing so the said Richards acted for himself individually, and not for the Commonwealth Trust Company, and that the notes executed at the time by the plaintiff were not executed in favor of or made payable to the Commonwealth Trust Company, but that they were executed by plaintiff and made payable to the order of herself, and were indorsed by her; that shortly after said transaction was consummated between plaintiff and said W. E. Richards, and before maturity of said notes, the said $2,310 note was transferred and sold by the said W. E. Richards to the Commonwealth Trust Company; and that said company paid to the said Richards full value thereof, without any notice of any fact or circumstance that would vitiate said note. And, in substance, it was alleged that the Commonwealth Trust Company was the owner and holder of said note by purchase from said Richards for value, in due course of trade, and without notice of any defects or facts that would vitiate said note in its hands.

Defendant Brice answered by general demurrer and general denial, and pleaded specially that the transaction in connection with which plaintiff executed the note here sought to be canceled was wholly between the plaintiff and said W. E. Richards personally, and that the note sought to be can-

celed was executed by the plaintiff and made payable to the order of herself, and not to the Commonwealth Trust Company, and that, if there were any facts in connection with the transaction that would vitiate said note in the hands of said Richards, nevertheless, the Commonwealth Trust Company, for a valuable consideration, purchased said note from said W. E. Richards, without any notice of any such facts, and paid full value therefor, in due course of trade, and was therefore a purchaser of said note in good faith, and that thereafter defendant Brice purchased said note from the Commonwealth Trust Company, and paid full value therefor, and was the legal and equitable owner of the same, as well as the lien constituted by said deed of trust to secure the payment of said note, and that defendant was entitled to collect said note, or the balance due thereon, together with a foreclosure of said deed of trust to secure the same. This defendant further alleged that before he purchased said note from the Commonwealth Trust Company he took the precaution to call upon plaintiff for the purpose of ascertaining whether there was any reason why he may not safely purchase the same, and that, in substance, he was informed by plaintiff that she owed said note, and that plaintiff in fact requested this defendant to purchase said note, and that, relying upon such statements and request of plaintiff, this defendant purchased said note from the Commonwealth Trust Company, and paid full value therefor, and would not have done so but for such representations and statements on the part of plaintiff, and that therefore plaintiff was estopped to now question the validity of said note or deed of trust securing the same, or this defendant's right in any manner to collect said note and foreclose said deed of trust to secure the same, and also, by a cross-action in proper form, defendant Brice prayed for recovery against plaintiff for the balance due on said $2,310 note, together with interest and attorney's fees, and for foreclosure of said deed of trust given to secure the same.

On June 6, 1916, the case was tried with a jury, and was submitted to the jury upon 13 special issues, all of which were answered by the jury, and upon such verdict the court rendered judgment in favor of appellee, canceling said $2,310 note, and also canceling said deed of trust, as constituting a cloud upon plaintiff's title to the land covered thereby.

Defendant Brice in due time filed his motion for a new trial, which was overruled by the trial court, and the action of the trial court in that regard was duly excepted to, and the judgment has been brought here by appeal for review.

The first issue submitted to the jury by the trial court was as follows:

"Question No. 1. Who was the real owner of the ten shares of stock of the Commonwealth Trust Company immediately prior to the time same was transferred to Mrs. V. D. Hardee, the said W. E. Richards, or the Commonwealth Trust Company?"

To this question the jury answered: "The Commonwealth Trust Company."

Issue No. 5 submitted to the jury was as follows:

"Question No. 5. Was the note in question payable to the Commonwealth Trust Company?"

To this question the jury answered: "Yes."

The sixth issue submitted to the jury was as follows:

"Question No. 6. Was the note in question payable to 'myself' and by Mrs. Hardee indorsed?"

To this question the jury answered: "No."

The eighth issue submitted to the jury was as follows:

"Question No. 8. Did Mrs. V. D. Hardee tell the defendant C. R. Brice at or prior to the time he purchased said note that if he bought the same that she would pay the same?"

To this question the jury answered: "No."

We deem it unnecessary to set out further questions propounded by the court to the jury, or the answers of the jury in response to further questions, for the reason that, if the findings of the jury to questions Nos. 1, 5, 6, and 8, as above shown, are based upon sufficient evidence to support them, then the judgment of the trial court must be affirmed.

It is strenuously insisted by counsel for appellant Brice that the answer of the jury to question No. 1, to the effect that the ten shares of stock issued to appellee belonged to the Commonwealth Trust Company, was wholly without support in the evidence, or, if not, that the evidence so preponderated against such finding as to suggest prejudice or bias or some other improper motive prompting the jury to so find, and that this court should so hold. Upon this point, the material testimony, as we conceive it to be, was substantially as follows:

Appellee testified that she went to W. E. Richards, as president of the Commonwealth Trust Company, for the purpose of securing a loan of $1,165.86 from the Commonwealth Trust Company, knowing that said company was engaged in the business of banking and lending money upon proper security; that this was about the 1st of November, 1912, and that she went through the usual procedure of furnishing an abstract of title to the tract of land in Liberty county covered by the deed of trust in question, and, in fact, made known to Richards, as president of said company, just what she wanted and the necessity for getting the money as soon as she could; that she went back about the 30th of November, 1912, and she was then informed by Mr. Richards that the company would make her the loan desired, provided she would purchase ten shares of the company's stock; that it was represented to her by Richards that the stock of the Commonwealth Trust Company had a value at that

time of $105 per share, and that, being compelled to raise money with which to pay off and discharge a lien then existing upon the tract of land covered by the deed of trust, she agreed with Richards, as president of the company, and acting for the company, to purchase ten shares of the stock of the Commonwealth Trust Company, and that thereupon she executed two notes, one for $2,310, and the other for $183, both payable to the Commonwealth Trust Company, and both being due 90 days thereafter, and bearing interest at the rate of 10 per cent. per annum until paid; that the ten shares of stock were issued to her, and that she attached the same to the $2,310 note as additional security for its payment; that it was not stated to her by the said Richards that he was making the loan to her out of his individual means, or that in making such loan he was acting for himself individually, nor did the said Richards state to her that the stock purchased by her was his individual stock, but, on the contrary, it was expressly stated that the stock was being issued by the Commonwealth Trust Company, and the money was being loaned by such company; that she received in actual cash at the time of such transaction $1,221, and said stock certificate for ten shares; that she did not pay anything for said stock when it was issued, other than said note, nor did she perform any labor of any kind for such stock; that the $183 note was fully paid off and discharged; and that appellee had also paid to the Commonwealth Trust Company the full amount of money that she received at the time of the execution of said notes and deed of trust.

There was also introduced in evidence in this connection the following letters from W. E. Richards, president of the Commonwealth Trust Company, to Mrs. V. D. Hardee:

"Houston, Texas, Nov. 30, 1912.
"Mrs. V. D. Hardee, Houston, Texas—Dear Madam: This is to advise that we are to make payment of the taxes on your lands in Liberty county for the years 1911 and 1912, the taxes for 1911 supposed to be $14.18 and $16.54 for 1912.

"There is also a charge of $5.00 for bringing down the supplemental abstract, which is to be paid by us, as well as recording fees for deed, deed of trust, and releases, etc. It is our understanding that all of these charges are to be taken care of by us.
"Yours truly,
                "W. E. Richards, President."

"Houston, Texas, Nov. 30, 1912.
"Mrs. V. D. Hardee, Houston, Texas—Dear Madam: This is to confirm the agreement had with you to the effect that you have the right to cut the timber on the 313-acre tract of land in Liberty county, same tract against which we hold security; the understanding being that all of the proceeds coming to you are to be deposited with us for the payment of your obligation to us. I believe that you expect to get a net price of $3.00 per thousand for the pine and so much for the cord wood and hardwood as you can get.
"Yours truly,
                "W. E. Richards, President."

On the other hand, it was positively testified by W. E. Richards that the ten shares of stock which were issued to appellee at the time of the execution of the notes and deed of trust in question was his own individual property, and that he informed appellee at the time of the transaction in question that he, individually, was making the loan to her, and that the stock which she was purchasing was his individual stock, and that the transaction was between him individually and appellee, and that the Commonwealth Trust Company had nothing to do with same; that the notes which were executed by appellee were not made payable to the Commonwealth Trust Company, but were made payable to the order of appellee, and were indorsed by appellee; that he (Richards) caused said notes to be made so payable, so that he might be able to transfer them without indorsement by himself, and that he did, within a few days after the transaction was consummated, transfer and sell said notes to the Commonwealth Trust Company, but that he could not remember just what was paid him by the Commonwealth Trust Company for said notes, but that approximately the face value thereof was paid to him; that he made no false representations to appellee as to the value of said stock, but that he considered said stock worth $105 at the time of its purchase by appellee; that he was the owner at the time of this transaction of approximately $60,000 worth of the Commonwealth Trust Company's stock; and that the ten shares issued to appellee came out of the shares of stock owned by him in said Commonwealth Trust Company, as shown by the stock ledger of the Commonwealth Trust Company. A page from the stock ledger of the Commonwealth Trust Company (it being a loose-leaf ledger) was introduced in evidence, from which it appears that the 10 shares of stock issued to appellee were out of stock certificate No. 171 for 601 shares of the Commonwealth Trust Company's stock standing in the name of W. E. Richards. The note itself, which was executed by appellee at the time of the transaction in question, was not produced on the trial, but it was claimed by the Commonwealth Trust Company and the defendant Brice that the note had been lost, and that the same could not be found, after diligent search, and therefore the note itself could not be produced for the purpose of showing to whom it was made payable, but it was recited in the deed of trust given to secure the same that the note executed by appellee at the time of the transaction was made payable to the order of appellee, and this recitation in the deed of trust was introduced in evidence on that point. There was also introduced in evidence on the trial what purported to be a copy of said $2,310 note, which the defendant Brice claimed he made before the note was lost, and this copy showed that said

note was made payable to the order of appellee, as claimed by both defendants in this suit. The defendant Brice, however, was not able to explain just why he made this copy of the note, nor could he or the Commonwealth Trust Company explain how the note itself got lost. While the witness Richards was on the stand, he was asked by counsel for appellee if the Commonwealth Trust Company's records would disclose how this transaction with appellee was carried on its books as between W. E. Richards and the company itself, and to this question Richards replied that he supposed the records of the trust company would show how this transaction was carried as between the company and himself, but that he had not the records with him showing such fact, and that he had made no search for any such record, and, in substance, that appellee might make the search if she desired to do so.

Portions of the original answer, which was filed by the Commonwealth Trust Company as a predicate for a motion to dissolve the temporary injunction in this case granted in vacation, were introduced in evidence on this point, from which it appears that in such original answer it was admitted that the certificates of stock purchased by appellee were purchased from the Commonwealth Trust Company. The effect of this admission was sought to be nullified and explained away by the defendant Brice while a witness on the stand, and also by the witness W. E. Richards. Nevertheless this admission as to the ownership of the stock at the time of this transaction was legitimate and proper evidence before the jury, and was entitled to consideration and such weight as the jury thought proper to give it, in connection with the other facts and circumstances on this point.

It is also undisputed that the money advanced to appellee at the time the note in question was executed, and which, together with the ten shares of stock issued to her, constituted the consideration for the note in question, was in the form of a check drawn by the cashier of the Commonwealth Trust Company on that company, and there was nothing in connection with this check to indicate that any part of such money represented thereby belonged to or was furnished by said W. E. Richards individually, but Richards testified that he caused this to be done merely as a convenience, and that he was charged by the Commonwealth Trust Company with the money thus advanced to appellee, and this is the record that counsel for appellee was inquiring about when the said Richards stated that he had not looked for such record, and that he presumed the same was open to inspection by counsel for appellee if they desired to see the same.

We believe that the foregoing states, substantially, most of the material testimony introduced on the trial below relative to the issue of the ownership of the ten shares of stock in question, at the time the same was issued to appellee, but there are other circumstances shown by the record which, in our judgment, tend to corroborate and sustain the contention of appellee that said stock was sold to her by the Commonwealth Trust Company itself, acting through its president, W. E. Richards, and not by W. E. Richards individually, and we are of opinion that the evidence on this point was sufficient to warrant the jury in so finding, in response to that issue submitted by the court.

Now, the next point to be determined is whether the finding of the jury in response to issue No. 5, to the effect that the note in question was made payable to the Commonwealth Trust Company, has sufficient support in the evidence, or is so wholly without support in the evidence as to authorize this court to set aside and ignore that finding.

As stated above, the note itself was not produced on the trial, it being claimed by the Commonwealth Trust Company and appellant Brice that the note had been lost, but neither of them could say who was responsible for the loss of the note, or how the same was lost. Appellants, however, strenuously argue that, because it was recited in the deed of trust that such note was made payable to the order of appellee, this recitation itself ought to be conclusive on the point, but that, if not, still this recitation, corroborated as it was by the positive testimony of W. E. Richards and appellant Brice, shows beyond reasonable controversy that such note was not made payable to the Commonwealth Trust Company, but was made payable to the order of appellee. The testimony of appellee on this point was positive, to the effect that this note was made payable to the Commonwealth Trust Company, and the jury evidently gave full credence to appellee's testimony on this point; and in view of the fact that the note itself was not produced, and taking into consideration the relation sustained by W. E. Richards and the appellant Brice to the Commonwealth Trust Company at the time of the transaction in question, we do not feel authorized to say that the jury's finding on this point is so wholly without support in the evidence as to warrant this court in setting aside such finding and substituting its own in that connection.

At the time of this transaction W. E. Richards was president of the Commonwealth Trust Company, which concern was in the business of lending money upon security, and for that reason, as stated by appellee, she applied to the Commonwealth Trust Company for the loan she desired, and it would be but natural to presume that the president of the company acted for the company in extending this loan, and that he did not extend the same personally or individually, and thereby become a competitor of his company in the business of lending money. We say this would be a natural presumption

in the usual and ordinary course of business.

Appellant Brice was at the time attorney for the Commonwealth Trust Company, under regular monthly salary, his business being, among other things, to examine abstracts of title to property offered as security to the company for loans, and in his capacity as attorney he examined the abstract to appellee's land here in question, but he could not say on the witness stand whether in examining this abstract he was acting for the Commonwealth Trust Company or for W. E. Richards individually, and there is nothing in the record to indicate that he received for his services in this connection any compensation other than the salary paid him monthly by the Commonwealth Trust Company.

Taking, therefore, the positive testimony of appellee, to the effect that this note was made payable to the Commonwealth Trust Company, in connection with the fact that the note was not produced on the trial, and the other circumstances just mentioned by us, we cannot say that the finding of the jury on this point is without sufficient support in the evidence to warrant this court in upholding the same, but, on the contrary, it is our opinion that the evidence on this point, taken as a whole, was such that the jury was warranted and authorized to find that said note was made payable to the Commonwealth Trust Company.

What we have said in connection with the fifth finding of fact by the jury necessarily disposes of their finding on the sixth issue, which finding was that said note was not made payable to the order of appellee.

As hereinbefore stated, appellant Brice, among other things, alleged, substantially, that before he purchased the note in question from the Commonwealth Trust Company, he made inquiry of appellee as to whether she recognized the note as an obligation against her, etc., and that, in fact, appellee requested him to purchase the note, and stated to him that she would pay the same if he did so, and that, acting and relying upon her statements and promise in that connection, he did purchase the note, and that therefore appellee was, in effect, estopped to deny the validity of the note in his hands. On the trial below appellant Brice swore substantially to these allegations contained in his answer, but appellee testified just to the contrary, and further stated that she did not even know that appellant Brice was contemplating purchasing the note, but that he did, in fact, make some inquiry of her regarding the security furnished by the land covered by the deed of trust. W. E. Richards also testified on this point, in substance, that before appellant Brice agreed to purchase the note from the Commonwealth Trust Company, he (Brice) stated to Richards that he desired to confer with appellee about the matter, for the reason that she was a woman, and that he did not care to purchase the note until assuring himself that no question would be raised by her as to the validity of the note, in the event he should purchase the same, and that appellant Brice, upon making such statement, left the office of Richards, with the statement that he was going then to see appellee about the matter, and that shortly thereafter Brice returned and stated to Richards that he was satisfied, and would purchase and did purchase the note from the Commonwealth Trust Company.

This is practically all the material testimony on this point, and from this it is contended that the jury was compelled to find that appellee stated to Brice, before he purchased the note from the Commonwealth Trust Company, that she intended to pay and would pay the same to him. We cannot agree with this contention on the part of appellant, and hold that the testimony in favor of appellee on this issue, if given credence by the jury, was sufficient to authorize their finding on this point, and overrule appellants' contention in this connection.

[1, 2] It follows from what we have said that the evidence was sufficient to warrant the jury in finding: (1) That the shares of stock purchased by appellee at the time of the transaction in question were owned and issued by the Commonwealth Trust Company, out of its capital stock; (2) that the note in question was made payable to the Commonwealth Trust Company; (3) that appellee did not request appellant Brice to purchase said note from the Commonwealth Trust Company, and did not promise or lead him to believe that she would pay the same to him, in the event he should do so.

[3] The record is undisputed to the effect that appellant Brice did not purchase the note in question from the Commonwealth Trust Company until long after its maturity, and for that reason he took the same subject to all defenses that appellee had against the Commonwealth Trust Company, had said company sought to collect the same while in its hands.

[4] If the Commonwealth Trust Company sold the ten shares of stock in question to appellee, taking as part consideration therefor said note, such transaction was unauthorized, and was prohibited by article 12, § 6, of the Constitution of this state, which provides that:

"No corporation shall issue stock or bonds except for money paid, labor done, or property actually received, and all fictitious increase of stock or indebtedness shall be void."

And since the jury in this case has found that the shares of stock in question were issued by the Commonwealth Trust Company, a corporation, to appellee, and since the undisputed proof shows that the note executed by appellee in payment therefor constituted a material and substantial part of the consideration for such stock, and since it is undisputed that appellant Brice is not in

the attitude of an innocent purchaser of said note, the same is void and unenforceable in his hands, and the trial court was not in error in so decreeing. Irrigation Co. v. Deutschmann, 102 Tex. 207, 105 S. W. 486, 114 S. W. 1174; Republic Trust Co. v. Taylor, 184 S. W. 772; McCarty v. Loan Co., 142 S. W. 96; Mason v. Bank, 156 S. W. 366; Lockney State Bank v. Martin, 191 S. W. 796. See also Reed v. Brewer, 91 Tex. 144, 37 S. W. 418; Edwards County v. Jennings, 89 Tex. 618, 35 S. W. 1053.

While we have not discussed numerically the assignments of error found in appellants' brief, yet we have considered them all, and what we have said above has the effect to dispose of them all adversely to appellants' contention, and it follows that the judgment of the trial court canceling and holding for naught the note and deed of trust in question should, to that extent, be in all things affirmed, and it is so ordered; and, it appearing to this court that upon the verdict of the jury the trial court was authorized and should have entered judgment to the effect that appellant Brice take nothing by his cross-action against appellee, this court here now enters such judgment as the trial court should have entered in that connection, and it is ordered that appellant Brice take nothing upon said cross-action as against appellee, and the judgment of the trial court is modified and affirmed accordingly.